## No. 9321.

### THE STATE OF LOUISIANA vs. PATRICK EGAN, JR.

An irregularity in the manner of drawing the jury, unless it be alleged and shown to be accompanied by fraud or a great wrong, cannot avail an accused on appeal. It is not every irregularity in criminal practice that works injury.

Under a showing that an accused, in a case pending in New Orleans, when witnesses do not live at great distances from the court, took necessary steps to summon his witnesses within three days of the notice of trial, and seven days in advance of trial, is *prima facie* proof of due diligence. Under such a showing, the absence of a witness residing in said city. but temporarily absent therefrom, whose attendance the accused had sought to secure by moving for necessary process to be served in the parish where the witness is supposed to be at the time, such steps being taken seven days before trial, will entitle the accused to a continuance of his cause.

APPEAL from the Criminal District Court for the parish of Orleans. *Roman, J.*

*M. J. Cunningham, Attorney General,* and *Lionel Adams, District Attorney,* for the State, Appellee.

*W. L. Evans* for Defendant and Appellant:

The opinion of the Court was delivered by

POCHÉ, J. The defendant seeks relief from an unqualified verdict of murder, and charges numerous errors to his detriment.

His challenge to the array of jurors presents an objection to the discretion exercised by the jury commissioners in rejecting certain persons for the reason that they did not possess sufficient intelligence to serve as jurors, as they were unable to read or write. This is substantially the ground which we recently considered and disposed of in the case of Foster Chase, Jr. not yet published. We adhere to the reasoning which shaped our action in that case.

He also charges error in the manner of drawing the jury, for a failure on the part of the commissioners to comply with one of the requirements of Section 2 of Act No. 98 of 1880, providing for the manner of drawing jurors in the parish of Orleans.

That Statute requires that the commissioners should always have in the wheel whence the names of the jurors are to be drawn, at least one thousand names of persons competent to serve as jurors; to certify a list of such names to be returned to, and kept by, the clerk of the criminal district court; and to supplement said list as often as additional names or slips are placed in the wheel, so as to make up the legal number of names required to be kept therein.

It appears that, from the month of February, 1882, to May, 1884, at which occurred the drawing which contributed the *venire* serving in this case, the names of the jurors of each panel who did not appear, and who were known to the commissioners as residents of the city of New Orleans, were immediately placed back in the wheel, and that such names were not included by them in the supplemented lists.

It thus occurred that between the two periods of time above stated the number of jurors drawn for service in the criminal district court was 12,654, and that the aggregate number of names appearing on the list and supplemented lists in the hands of the clerk was 10,688.

That discrepancy was explained by showing, as stated, that the names of drawn jurors who had not been found or who otherwise failed to serve, had been placed back in the wheel, and that their names had not been re-listed, for the reason that such names had been entered on some previous list.

This is certainly an irregularity, and its inevitable result was the discrepancy between the number of jurors drawn and the various lists in the hands of the clerk. It is the clear and unequivocal intent of the law that these two statements must tally, and hence the names of drawn jurors which are replaced in the wheel by the commissioners should be included in the new or supplemented list as often as they are thus replaced in the wheel.

But the point presented beyond that discovery shows no consequence which could invalidate the trial of this accused. It is not every irregularity which operates injury. The defendant has failed to allege and, *a fortiori*, to prove that the irregularity which he has shown, was the result of any fraud, and was such a great wrong as would or did work him an irreparable injury. This was an indispensable requirement under the provisions of Section 10 of Act 44 of 1877. State vs. Smith,

24

33 Ann. 1414; State vs. Harris, 34 Ann. 118; State vs. Edward, 35 Ann. 1098.

Our only object in giving so much time to the discussion of this point, is to secure a precise compliance with all the requirements of the law in the administration of justice in criminal cases.

His next complaint is levelled at the refusal of a continuance of his case, and that objection presents a formidable ground, under which we feel compelled to grant him relief.

The record, on this point, shows as follows:

On the 14th of November, 1884, the defendant, then in prison, was notified that his case was fixed for the 24th of that month; this was the first and only day selected for the trial.

On the 17th of the month, his counsel informed the court through his affidavit that Hubert Fielder, a resident of New Orleans, and an important witness for the accused, was absent from home, in the employ of a Government boat then used on public works in Red river, and in the parish of Grant; and on his motion, the court ordered a *subpœna* directed to the proper officer for service on the absent witness.

On the day of trial the witness was absent, whereupon counsel for the accused moved for a continuance of the cause. The motion was supported by the affidavit of the accused reciting the above proceeding, and the additional fact that the absence of the witness from his residence had been discovered by him only on the 17th of November, the day on which he had applied for a *subpœna* in order to secure the attendance of the witness.

He further set forth in his affidavit that on his procurement a special messenger had been sent by the criminal sheriff with the proper papers to the parish of Grant, where he was informed that the boat on which the witness was employed had left the place and had proceeded to the parish of Rapides, whereupon the messenger had gone down to the latter parish, where he found that the boat had moved further down, but was momentarily expected to return to Alexandria in said parish, and the papers were left in the hands of the sheriff of that parish, the messenger returning to this city the day before the trial. The affidavit also contained a statement of the facts which were expected to be proved by the absent witness, and that no other witness could prove them; the facts were material, and would, in our opinion, have been sufficient at least to reduce the verdict to manslaughter. The affidavit ended with the averment that the attendance of the witness

could be secured for the next term of the court; and the record shows that this would have been only a week later.

Under this showing, which we have taken the pain to recite at great length, because of its completeness, the accused was justly entitled to a continuance. It is conceded by our learned brother of the district court, that the showing makes ample proof of due dillgence from the 17th of November, but not before that day.

The attorney-general fails to inform us, and we are not aware, of any rule of law or of practice, under which an accused in the city of New Orleans must be held to take steps, more than one week previous to his trial, to secure the attendance of his necessary witnesses. We believe, and we therefore hold, that steps taken by an accused under duress, in case pending in the city of New Orleans, within three days of the notice of trial, and seven days previous to the day of trial, to see to the summons for his witnesses, is a *prima facie* good showing of diligence, and that such a showing fails to suggest any suspicion of *laches* on his part.

We fail to see anything in the record to justify the belief or the apprehension suggested by counsel for the State that the attendance of the witness could not have been secured for the next term of the court. Every circumstance disclosed by the record tends to justify a contrary belief.

We are in this case, as we usually feel, very loth to interfere with the discretionary conclusions of a consciencious trial judge, but under our sense of duty we must rule according to the impressions which are forced upon our minds from a careful examination of the record. State vs. Brette, 6 Ann. 653; State vs. Bortreaux, 31 Ann. 189; State vs. Briggs, 34 Ann. 71; State vs. Bolds and Trevanier, recently decided.

Concluding as we do to reopen the case on this ground, we are relieved of the necessity of considering numerous other complaints urged by the zealous counsel of the accused.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reversed, that the verdict of the jury be avoided and set aside, and that this case be remanded to the lower court for further proceedings according to law.